## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-60261-RKA

TIFFANY NGUYEN and WILLIAM
MUSCARA, on behalf of themselves and
all others similarly situated,

     Plaintiffs,

v.

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX Sports, a Florida corporation,

     Defendant.

_____/

## MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant, Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b), hereby moves to dismiss the First Amended Class Action Complaint ("FAC") (DE 25) filed by Plaintiffs, Tiffany Nguyen and William Muscara ("Plaintiffs"), and states:

## INTRODUCTION

This is the second of two copycat class actions filed against VPX in the Southern District of Florida related to its BANG® energy products. A motion to dismiss is already pending in the first case, entitled *Shirley St. Fort-Nwabuku v. Vital Pharmaceuticals, Inc. dba VPX Sports*, No. 18-62823-CIV-SCOLA/SNOW (S.D. Fla. Nov. 19, 2018) ("*St-Fort*"). This case, like *St. Fort*, is dead on arrival, and should be dismissed.

Regrettably, this litigation all started when Monster Energy Company ("Monster") filed an action against VPX[1] related to the advertising of its BANG® energy products on September 18, 2018, in the Central District of California, then publicly invited the filing of copycat "consumer class action lawsuits."[2] The instant copycat action quickly followed. (DE 25.) Plaintiffs in this

_____

[1] *Monster Energy Co. v. Vital Pharmaceuticals, Inc., et al.*, No. 5:18-cv-01882 (C.D. Cal., Apr. 2, 2019) (the "*Monster* Action").

[2] *See* Martin Caballero, *Monster Energy Sues VPX Over Bang Energy Claims*, BEVNET, Sept. 6,

case, and in *St. Fort*, failed to appreciate that Monster—which competes with VPX in the energy drink space and was planning to launch a knockoff brand called "Reign" to compete with VPX's BANG® brand—had an ulterior motive for filing the *Monster* Action. VPX's BANG® energy drinks have been wildly successful with consumers and rapidly gaining market share in the energy drink sector, while sales of Monster's flagship, sugar-laden products have declined. And, in such cases, when Monster has failed to compete head-to-head with other products in the regular market, Monster has a long (and unsuccessful) history of trying to destroy its perceived competitive threats through vexatious litigation; i.e., as the independent press has observed, "Monster decided to do what any good loser might, and sue."[3]

Notably, on June 17, 2019, the court in the *Monster* Action denied Monster's motion for preliminary injunction which sought a recall and the halt of future sales of BANG® products, finding that Monster's "overly narrow understanding of the word 'creatine'" conflicted with its own evidence that there are many forms of creatine in the market, and that Monster had failed to demonstrate that it was likely to succeed on the merits of its claims that BANG® does not contain creatine or that its patented form of creatine, Super Creatine® (creatyl-L-leucine), does not provide the benefits of creatine.[4]

Here, Plaintiffs essentially copy the same meritless claims asserted by Monster and the plaintiffs in the identical pending class actions, including in *St. Fort*. Despite Plaintiffs' prior amendments, the FAC still fails to state a claim and should be dismissed.

First, Plaintiffs fail to state a claim to relief that is plausible on its face, because:

    (a)    the formulaic and contradictory allegations negate the entire basis of their claims;

    (b)    the advertising terms "potent brain & body-rocking fuel," "super," and "ultra" are nothing more than non-actionable puffery;

    (c)    the claims for unjust enrichment, violations of consumer protection statutes, and breach of warranty lack a factual basis, including the "benefits" that VPX advertised but allegedly failed to deliver or the "ingredients" that these products

---

2018, *https://www.bevnet.com/news/2018/monster-energy-sues-vpx-bang-energy-claims*.

[3] *See* Catherine Davis, *Jack Owoc and Bang Energy Are Killing Monster Energy*, USA HERALD, Apr. 9, 2019, *https://usaherald.com/jack-owoc-bang-energy-killing-monster-energy/*.

[4] *Monster Energy Co. v. Vital Pharmaceuticals, Inc., et al.*, No. 5:18-cv-01882 (C.D. Cal., Apr. 2, 2019) ("*Monster*") (DE 122).

purportedly do not contain;

(d)   Plaintiffs point to no scientific studies or other factual support for their conclusory allegations that BANG® does not contain the pertinent ingredients or that the ingredients are ineffective for their advertised purpose; and,

(e)   Plaintiffs have failed to establish an "unfair" UCL claim because they have not identified a specific legislative policy that VPX violated.

Second, Plaintiffs' claims for injunctive and declaratory relief fail.  Plaintiffs lack Article III standing to seek either declaratory or injunctive relief, either on an individual or representative basis, because Plaintiffs cannot establish that they are likely to suffer future injury from VPX's alleged conduct.  Plaintiffs' claim for declaratory relief must be also dismissed as being duplicative of Plaintiffs' other affirmative claims because it does not secure any relief that differs from their affirmative claims.  Thus, Plaintiffs' claim for declaratory relief amounts to a request for this Court to merely find that VPX is liable on Plaintiffs' affirmative claims, which is useless.

## <u>RELEVANT ALLEGATIONS</u>

Plaintiffs initiated this class action on January 20, 2019, on behalf of a purported class of consumers nationwide and in California and Pennsylvania, alleging that VPX falsely advertised its BANG® products.  Specifically, Plaintiffs allege that the statements that BANG® contains "potent brain & body rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branch Chain Amino Acids)," that the creatine is "SUPER," and that the CoQ10 is "ULTRA" are false because BANG® allegedly either does not contain those ingredients, or the amounts contained in each can are insufficient to be effective to provide the claimed benefit to consumers.

Plaintiff Nguyen vaguely alleges that "in January of 2018, Plaintiff started purchasing BANG at least two to three times per month at retailers within California, including GNC, Vitamin Shoppe and local convenience stores."  (FAC, ¶ 39.)  Plaintiff Muscara alleges that "in August of 2017, Plaintiff started purchasing BANG at least once per week at retailers within Pennsylvania including GNC and local convenience stores."  (FAC, ¶ 40.)  Both Plaintiffs allege that they purchased BANG® "in reliance upon the representations on its labels regarding the ingredients claimed to be in the Products and the purported benefits that the ingredients would provide from consuming the Products."  (FAC, ¶¶ 39, 40.)  Plaintiffs do not allege that they actually consumed the BANG® they allegedly purchased, the actual products allegedly purchased, or when such purchases were allegedly made.  Plaintiffs both allege that they paid a premium for BANG® based

3

on its representations "regarding ingredients that enhance exercise performance and muscle recovery," but Plaintiffs do not allege where VPX made any such representation. (FAC, ¶¶ 39, 40.) Nor do Plaintiffs allege what it even means in their view for any amount of creatine, CoQ10, or BCAAs to be effective.

The crux of Plaintiffs' grievances are that, allegedly after purchasing the undisclosed product(s) at issue, they have "since learned that BANG does not contain the marketed and labeled ingredients, or that the amounts are *de minimis* and cannot provide the purported benefits from consuming the Products" (FAC, ¶¶ 39, 40), thereby rendering BANG® mislabeled. However, Plaintiffs do not allege critical information about their alleged discovery "that BANG does not contain the marketed and labeled ingredients," including when and how they made such discovery, or which ingredients are allegedly mislabeled. Likewise, Plaintiffs do not point to a single scientific study or other verifiable factual claim for their conclusory allegations that BANG® does not contain the pertinent ingredients or that those ingredients are ineffective for their advertised purpose or were not delivered as advertised.

## CAUSES OF ACTION IN THE FAC

The FAC alleges that VPX, through the sale of BANG®. (1) has been unjustly enriched (all classes); (2) breached an express warranty (all classes); (3) breached an implied warranty of merchantability (all classes); (4) violated FDUTPA (nationwide); (5) violated the California Consumer Legal Remedies Act ("CLRA") (California class); (6) violated the California Unfair Competition Law ("UCL") (California class); (7) violated the California False Advertising Law ("FAL") (California class); (8) violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Pennsylvania class); and (9) made negligent misrepresentations (Pennsylvania Class) because its representations that BANG® contains "potent brain & body rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branch Chain Amino Acids)" and that the creatine is "super" and the CoQ10 is "ultra" are false because BANG® allegedly either does not contain those ingredients, or the amounts contained in each can are "incapable of delivering the promised benefits and effects of these ingredients in the amounts contained therein." (FAC, ¶ 15.) Plaintiffs also assert a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## LEGAL STANDARD

Plaintiffs' allegations do not satisfy the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Accordingly, Plaintiffs' claims must be dismissed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is made "plausible" only when the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The tenet that factual allegations in the complaint are assumed as true does not apply to legal conclusions couched as factual allegations. *Id*.

Significantly, because Plaintiffs' claims are predicated on the same factual allegations and sound in fraud (FAC, ¶¶ 4, 49(k), 129, 131), their claims must be examined under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).") (citation omitted); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976, 2014 U.S. Dist. LEXIS 34550, at *8 (N.D. Cal. Mar. 14, 2014) (applying Rule 9(b) to fraud-based claims under the UCL, CLRA, and FAL); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 U.S. Dist. LEXIS 108720, at *19 (S.D. Fla. Sep. 23, 2011) (applying Rule 9(b) and dismissing FDUTPA claim for misleading advertising).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF

Plaintiffs fail to state plausible claims for relief. Each and every claim by Plaintiffs is predicated on their conclusory allegations that BANG® "**do not contain** the ingredients advertised

or listed on its label" or "contains them only in trace amounts" and does not provide the "effects and benefits" that VPX advertises.  (FAC, ¶ 3 (emphasis added).)  Critically, however, Plaintiffs also allege that BANG® contains **"insufficient or nugatory amounts"** of the pertinent ingredients, which directly contradicts the prior claim that these ingredients are allegedly absent or "lack[ing]."  (FAC, ¶¶ 15, 61 (emphasis added).)  Further, Plaintiffs fail to identify any specific representations or advertised benefits that were not actually met.  The FAC is devoid of any plausible allegations establishing that Plaintiffs desired a certain benefit that was not met by consuming BANG®.  Thus, Plaintiffs' own contradictory allegations are not only facially insufficient under the applicable pleading standard, but also negate their unjust enrichment, consumer protection, and advertising claims.

### A.  VPX's Representations that BANG® Is "Potent" and Contains "SUPER" Creatine and "ULTRA" Coq10 Are Non-Actionable Puffery

The FAC should be dismissed with prejudice because the terms "potent," "body rocking," "super," and "ultra" are not specific and measurable terms; rather, they are nothing more than highly vague, subjective, and general terms that constitute non-actionable puffery.

"[I]n order for an alleged misrepresentation to be actionable, it must, as a threshold matter, be capable of inducing reasonable reliance by a consumer."  *Thompson v. P&G*, No. 18-cv-60107, 2018 U.S. Dist. LEXIS 179888, at *5 (S.D. Fla. Oct. 19, 2018) (citing *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)).  "[S]ome representations, referred to as 'puffery,' are not actionable as a matter of law because no reasonable person could rely upon the representations as intended conveyances of fact."  *Id.*  (citations omitted); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) ("[A] party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like[.]"); *Boyd v. TTI Floorcare N. Am.*, 2011 U.S. Dist. LEXIS 161584, at *18 (N.D. Ala. July 29, 2011) ("Mere puffery or the seller's opinion are not enough" to create an express warranty).  As previously explained by the Eleventh Circuit:

> Puffing generally refers to an expression of opinion not made as a representation of fact.  *Gulf Oil Corp. v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir. 1945).  Statements made to puff goods are not actionable in misrepresentation *even if untrue* on the theory that no reasonable person would rely on general claims of superiority made by a salesman.

*Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (emphasis supplied).  "Advertising which merely states in general terms that one product is superior is not

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

actionable." *Smith-Victor Corp. v. Sylvania Elec. Prods.*, 242 F. Supp. 302, 308 (N.D. Ill. 1965). "In distinguishing actionable representations from non-actionable 'puffery' under FDUTPA, courts in this district have looked to whether the claims are specific and measurable, as opposed to vague and highly subjective." *Thompson*, 2018 U.S. Dist. LEXIS 179888, at *5.

Statements regarding general attributes like "safety," "performance," and "quality" are not actionable because they are not quantifiable. *See Next Century Commc'ns Corp.*, 318 F.3d at 1028 (statement of "strong performance" was not actionable because it was "not the sort of empirically verifiable statement that can be affirmatively disproven"); *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1346 (S.D. Fla. 2001) (statements of "rock solid health coverage," "high performance," and "quality" "are textbook examples of puffery").

Here, statements regarding general attributes like "potent," "super," and "ultra" are textbook examples of non-actionable puffery.  These attributes cannot be empirically verified, quantified, or affirmatively disproven.  Tellingly, Plaintiffs do not allege otherwise or cite to a single scientific study supporting their conclusory allegations that BANG® product is somehow verifiably mislabeled or misleading.  At most, the statements at issue reflect the types of non-actionable opinions that any salesperson would make about his or her own products.  *See, e.g.*, *Wojcik v. Borough of Manville*, 2010 N.J. Super. Unpub. LEXIS 174, at *8 (Super. Ct. App. Div. Jan. 29, 2010) ("Statements that the helmet was 'one of the best' and 'great' are opinions.").

Further, VPX does not represent that the creatine, caffeine, CoQ10, and/or BCAAs in BANG® are, by themselves, "potent."  Rather, in employing the term "potent brain & body-rocking fuel," VPX is attesting to the potency of the BANG® product as a whole.[5]  Plaintiffs conveniently disregard and omit the fact that, in representing that BANG® as a whole is "potent," VPX refers not only to Super Creatine®, CoQ10, and BCAAs in the product, but also to the **300 mg of caffeine** and other ingredients contained in the product.  In other words, Plaintiffs cannot read the allegedly deceptive terms and affix them to the targeted ingredients in isolation to create the desired effect.  *Thompson*, 2018 U.S. Dist. LEXIS 179888, at *6 (individual representations cannot be read in a vacuum); *See Eckler v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 157132, at *23 (S.D. Cal.

---

[5] Plaintiffs repeatedly make the inaccurate and deceptive allegation that VPX represents that BANG® contains "'POTENT' BCAAs." (FAC, ¶¶ 28, 30, 70, 81, 91, 102, 118, 132, 144, 157). VPX in no way represents that the BCAAs standing alone are "potent."  The product label clearly states: "Power up with BANG's potent bran and body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids). (FAC, ¶ 16.)

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

2012) (the "overall formulation that's behind the representations at issue" must be considered to determine whether defendant falsely advertised a product's contents).

Taking the product as a whole (and not isolating statements regarding only creatine, CoQ10, and BCAA, as Plaintiffs attempt to do), Plaintiffs fail to establish that VPX's statements are false, let alone actionable. Amendment would be futile as a matter of law. Accordingly, the FAC should be dismissed with prejudice.

### B.     Plaintiffs Do Not Plausibly Allege Any Specific Benefits or Effects that VPX Promised but Purportedly Failed to Deliver

Plaintiffs vaguely allege that VPX advertised certain (unspecified) "effects" to consumers of BANG® (FAC, ¶ 2), and that the product does not "provide any of the claimed benefits to consumers." (*Id.* at ¶ 10.) However, Plaintiffs fail to identify exactly what benefits VPX represented that BANG®, or any of its individual ingredients, would provide to Plaintiffs, or what benefits Plaintiffs expected to derive from BANG®, but purportedly did not receive. These pleading deficiencies render the FAC implausible such that it must be dismissed.

A plaintiff claiming that a product did not provide the benefits claimed by the manufacturer must, at the very least, identify the specific benefits or effects promised. For example, in *Hodges v. Vitamin Shoppe, Inc.*, No. 13-3381, 2014 U.S. Dist. LEXIS 5109 (D.N.J. Jan. 15, 2014), the plaintiff sued a supplement store under a consumer protection statute for selling an allegedly mislabeled supplement. The plaintiff claimed, as here, that the product could not deliver the promised benefits because the ingredients utilized to provide those benefits were either absent or were present in quantities insufficient to effectively provide the claimed benefits. *Id.* at *2. The court in *Hodges* granted the defendant's motion to dismiss, noting the lack of any specific promise by the defendant of the alleged benefits recited by the plaintiff. *Id.* at * 9–10. "Apart from attacking the statements about the product in the broadest terms possible, the Complaint does not point to where on the label or the website these benefits, as recited by Plaintiff, are purportedly promised by Defendant." *Id.* Separately, the court further noted that, while the plaintiff's argument had "superficial appeal," "a closer examination reveals that it lacks a factual basis," because the plaintiff had failed to come forward with studies establishing that the pertinent ingredients were ineffective for their advertised purpose. *Id.* at *12–13.

Here, just as in *Hodges*, Plaintiffs vaguely allege that VPX "advertises" that consumers would derive certain unspecified "effects and benefits" from consuming BANG® (FAC, ¶ 2), but

fail to identify any specific benefits or effects VPX *actually* promised. Because Plaintiffs do not plead the benefits VPX allegedly promised, let alone substantiate those missing allegations with verifiable scientific studies or other factual support, Plaintiffs fail to state a plausible claim for relief. This pleading deficiency, alone, warrants dismissal. Moreover, Plaintiffs fail to allege what, if any, amount of the ingredients would be sufficient to deem them to be "potent," "super," "ultra," or "effective" in their view, necessary to satisfy their expectations.

Plaintiffs' citation to a various sources published by third parties, including *Men's Health* and *WebMD*, regarding the benefits commonly associated with consumption of creatine, CoQ10, and BCAAs do not render their claims plausible. (*See* FAC, ¶¶ 20 – 27.) Fundamentally, those publications are not representations by VPX, and VPX does not represent that the BANG® contains a specific quantity, much less a clinically effective dose, of creatine, CoQ10, or BCAAs sufficient to provide the specific benefits alleged in Paragraphs 20 through 27 of the FAC; rather, those are all benefits and effects published by persons other than VPX and have no bearing on its BANG® product specifically. Those allegations are red herrings.

Plaintiffs' reliance on cherry-picked statements from a YouTube video, as recited by Monster in its operative complaint, featuring VPX's CEO, Jack Owoc, fairs no better.[6] Plaintiffs allege that VPX represents that "Super Creatine" "reaches the brain 20 times more efficiently than regular forms of creatine" and that BANG® "can 'reverse mental retardation'" and "helps fight" forms of dementia. (FAC, ¶ 7.) These out-of-context representations are neither misleading nor literally false. As an initial matter, these alleged representations do not comply with Rule 9 because it is not stated when or where VPX allegedly made those statements, when and where Plaintiffs allegedly read or heard those statements, the context in which those statements were allegedly made, and how those alleged statements misled, or could mislead, Plaintiffs, or are otherwise false. And Plaintiffs have no standing to rely on the statements made in the YouTube video as they do not allege having had seen or relied on same prior to making their alleged purchases of BANG®. *Victor*, 2014 U.S. Dist. LEXIS 34550, at *21; *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (no standing to rely on statements not relied upon in purchasing product); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978,

---

[6] The video can be accessed at:
*https://www.youtube.com/watch?v=_hYcTX9jYr0&feature=youtu.be.*

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

984 (N.D. Cal. 2009) (no Article III standing to sue on statements not relied upon); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 436 n.2 (S.D.N.Y. 2015) (same).

VPX's Mr. Owoc never represented that BANG® in fact presently helps fight Alzheimer's or reverse cognitive degradation; rather, he simply states what benefits studies have shown that various forms of creatine can "possibly" provide, including that the potential benefits of creatine for aging and cognitive brain processes. He also discusses "exciting research" showing that a "creatine peptide *like* we have patented [creatyl-L-leucine] *with a long chain fat added* to it" can cross the blood-brain barrier more effectively than creatine monohydrate alone. Mr. Owoc never says that BANG® in its present formulation or Super Creatine alone will provide that benefit. Mr. Owoc's statements are consistent with published medical literature; notably, Plaintiffs point to no studies to the contrary. Neither VPX nor Mr. Owoc ever represent that BANG® actually contains a clinically effective dose of creatine, or can be utilized as a standalone product to combat any cognitive illness or process. *See Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171, at *20 (S.D.N.Y. Feb. 5, 2016) (partially dismissing FDUTPA and other consumer protection claims alleging that quantities of an ingredient in protein were ineffective for their advertised purposed, finding that "[t]here is no support for Plaintiffs' allegations that the studies found a minimum clinically effective dose, and the labels do not state that they are providing a clinically effective dose"). No reasonable consumer could rely on a representation— like those in the subject YouTube video—concerning the "possible" effects of an ingredient because no promises or guarantees are being made.

Even accepting as true Plaintiffs' allegation that VPX represented that the creatine in BANG® reaches the brain 20 times more effectively, no claim for relief has been stated because that representation does not amount to a specific benefit. Representing that a compound will reach a certain part of the body effectively is not the same as representing what benefit will result once the compound ultimately reaches that part of the body. Plaintiffs not only blur this important distinction, but entirely ignore it. Critically, Plaintiffs cite to no scientific evidence to establish that it is categorically impossible for creatine to provide the cognitive health benefits attributed to VPX in Paragraph 7 of the FAC.

In short, Plaintiffs have failed to identify the specific promises that VPX made regarding the challenged "benefits," any purported expectations of those benefits, and any actual purported

failure by VPX to meet those undisclosed expectations.  Accordingly, Plaintiffs fail to state a plausible claim for relief.

### C.    Plaintiffs Have Not Established That BANG® Does Not Contain Creatine, CoQ10, and BCAA, or That Those Ingredients Are Ineffective

Plaintiffs plead in the alternative that BANG® either (a) does not contain the represented ingredients, or (b) does contain the represented ingredients, but that they are ineffective to serve the purpose represented by VPX.  (FAC, ¶¶ 1, 29.)  In addition to failing to plausibly establish that BANG® does not contain creatine, CoQ10, and/or BCAAs, Plaintiffs also fail to plead enough facts to establish that the BANG® is not effective for a purported marketed purpose.

"In virtually all of the cases in which courts have held that the plaintiff adequately pled actual falsity in a false advertising case, the complaints in question cited to testing or studies that directly contradicted the advertising claim at issue."  *Spector v. Mondelēz Int'l Inc.*, 2017 U.S. Dist. LEXIS 158140, at *9 (N.D. Ill. Sep. 27, 2017) ("Allowing the plaintiff to proceed on her false advertising claim without the pleading of factual allegations directly supporting her claim of falsity would improperly shift the burden of proof from the plaintiff to the defendant.") (citation omitted); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012).  In cases where a plaintiff is claiming that a supplement is mislabeled, "the nature of the product at issue" is such that "only scientific testing . . . can show a supplement's claims to truly be false and/or misleading."  *Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2.

Unadorned conclusory statements about whether a product contains a certain ingredient or is ineffective for its marketed purpose do not state a plausible claim for relief.  *See Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 U.S. Dist. LEXIS 131135, at *16 (S.D. Fla. Sep. 13, 2013) (dismissing FDUTPA claim alleging ineffectiveness of supplement because complaint provided no support for the allegation that the product did not function as advertised); *Hodges*, 2014 U.S. Dist. LEXIS 5109, at *16–17 (dismissing claims for misleading advertising of benefits provided by a supplement because the plaintiff failed to establish falsity with specific allegations); *Arroyo v. Pfizer, Inc.*, No. 12-4030, 2013 U.S. Dist. LEXIS 13789, at *11–16 (N.D. Cal. Jan. 31, 2013) (rejecting as conclusory plaintiff's allegations that dietary supplement "does not support healthy immune function" as advertised, because plaintiff failed to plead any underlying factual support); *Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2 (finding speculative plaintiff's

conclusory allegation that the glucosamine product at issue "did not rebuild her cartilage, lubricate her joints or improve her joint comfort as represented").

In *Guerrero*, a plaintiff filed a putative class action against a retailer under a FDUTPA theory and asserted that it sold honey that was falsely labeled as containing pollen as an ingredient. 889 F. Supp. 2d at 1352. The retailer moved to dismiss, contending that the complaint was devoid of any factual support for the claim that the honey did not contain pollen. *Id*. The court agreed and dismissed the complaint because the complaint failed "to provide any more specific details regarding how Plaintiff knows that Defendant's honey did not contain pollen." *Id*. at 1355–56.

Here, just as in *Guerrero*, Plaintiffs provide *no* reliable factual support for their conclusory allegations that BANG® allegedly does not contain creatine, CoQ10, or BCAAs, which is a determination that undoubtedly requires scientific testing. Plaintiffs purport to rely on the scientific study commissioned by the plaintiffs in *Monster* and *Madison, et al. v. Vital Pharmaceuticals, Inc.*, No. 3:18-cv-06300 (N.D. Cal., Oct. 15, 2018) ("*Madison*"), to establish that BANG® does not contain creatine, CoQ10, or BCAAs. (FAC, ¶¶ 21, 23.)

Critically, Super Creatine is a form of creatine; it is a chemically synthesized compound created from linking creatine with leucine, resulting in creatyl-L-leucine. VPX clearly states on the product label that Super Creatine is creatyl-L-leucine. (FAC, ¶ 16.) Plaintiffs rely heavily on Monster's allegations to support their conclusory claims.[7] Monster, however, concedes that "[m]any forms of creatine exist." (*Monster*, DE 69-5 at 108; *id*. at 120 (apart from monohydrate, "many other forms of creatine exist" "in the sports nutrition/supplement market").) Monster also admits, in its complaint, that the "Super Creatine" in BANG® is indeed creatine. (*Monster*, DE 1 at ¶ 39 (VPX's "patented Super Creatine" "is nothing more than water-stable creatine."))

Thus, not only is Super Creatine a form of creatine, it undisputedly is present in BANG®. Monster's own studies detected Super Creatine in BANG®. (*Monster*, DE 61-1). The *Madison* study did not even test BANG® for creatyl-L-leucine, making it wholly irrelevant. (*Madison*, DE 1-2.) The alleged *Madison* study contradicts the alleged *Monster* study—which found that the product contains creatyl-L-leucine, CoQ10, BCAAs—and Plaintiffs' own allegations that BANG®

---

[7] It is inappropriate for Plaintiffs claims of wrongdoing to be based on the plaintiffs' claims in *Monster* and *Madison*. *Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 U.S. Dist. LEXIS 10926, at *8 (S.D. Cal. Feb. 9, 2010) (striking allegations borrowed from papers in separate related action because the plaintiff had not "independently investigated evidence that supported the plaintiff's claims").

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

does contain those ingredients. *Brown v. GNC Corp. (In re GNC Corp.)*, 789 F.3d 505, 515 (4th Cir. 2015) ("When litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'"). Plaintiffs' allegations are so conclusory and are contradicted by the referenced studies as to render their allegations implausible. *See Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2 (false advertising claims concerning supplements cannot be established without reliable scientific testing).

Indeed, on June 17, 2019, despite Monster's 1000-plus page evidentiary submission with more than 30 declarations from witnesses and scientific experts, the *Monster* court denied Monster's motion for preliminary injunction seeking to halt VPX's sales of BANG®, finding that Monster was not likely to prevail on the merits. (*Monster*, DE 122.) The court rejected Monster's argument that creatyl-L-leucine is not a form of creatine, finding that "Monster's claims rely on an overly narrow understanding of the word 'creatine,' since, as discussed in their own evidentiary submissions, '[m]any forms of creatine exist in the marketplace,' including formulations combining creatine with other amino acids." (*Monster*, DE 122 at 6.) The Court further found:

> While Monster argues that creatyl-L-leucine does not provide any of the benefits of creatine, the evidence they have submitted in support of this claim supports only the more general conclusion that the chemical and physical properties of a new substance formed from the combination of two amino acids differs from their constituent parts . . . . Plaintiff's briefing points to no evidence demonstrating that creatyl-L-leucine does not provide the benefits of creatine.

(*Monster*, DE 122 at 6.) The court also rejected Monster's testing as unreliable because its "tests" were performed "in a single lab of only four cans of a single flavor of BANG purchased in the same retail store in Southern California." (*Id.*)

Here, Plaintiffs attempt to support their claims by borrowing Monster's "overly narrow understanding of the word 'creatine'," which does not "demonstrate[e] that creatyl-L-leucine does not provide the benefits of creatine" and no in way establishes that BANG® lacks that ingredient. To the contrary, Monster's testing affirmatively proves that there is Super Creatine in BANG®. Plaintiffs' reliance on Monster does not save their unsupported, conclusory allegations.

Plaintiffs similarly provide no factual support for their speculative allegations that those ingredients are not effective for the "promised benefits" that Plaintiffs fail to identify in the FAC. In *Toback*, the plaintiff filed a class action against GNC, a nutrition store, and alleged that its sale of a product marketed to promote joint health and function violated FDUTPA because the targeted

ingredients were ineffective for that purpose, thereby rendering GNC's representations false. 2013 U.S. Dist. LEXIS 131135, at *2. The defendant moved to dismiss the complaint, arguing that the plaintiff had failed to plausibly establish that the product was ineffective for its marketed purpose of repairing his cartilage. *Id*. This Court dismissed the complaint and explained that the Court need not accept as true the plaintiff's conclusion that the product was ineffective, because the complaint was "devoid of any further detail or support" and otherwise failed to elaborate on his allegations that the product was ineffective. *Id*. at *17–18.

In the present case, just as in *Toback*, Plaintiffs' conclusion that "BANG is incapable of delivering the promised benefits" (FAC, ¶ 9) completely lacks any factual support and does not raise Plaintiffs' claims above the speculative level. Although Plaintiffs allege that BANG® is ineffective, they do not allege, among other material details, the specific benefits they sought to derive from consuming BANG®, how often they consumed it, when and for how long they consumed the product, which product(s) they actually purchased or consumed, and whether they noticed any physical changes in their bodies from the product(s) as a whole, including the caffeine (or lack thereof in the caffeine-free versions). Importantly, neither Plaintiffs allege that they *actually* consumed the BANG® they allegedly purchased. This further renders their claims implausible. *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258-59 (E.D.N.Y. 2014) ("Indeed, even though Tomasino asserts that she purchased the products 'for personal use,' Am. Compl. para. 19, she stops short of alleging that she actually used either of the ANR products she purchased. It is not enough to simply allege, as the plaintiff does, that the ANR products do not and cannot work, and thus the advertisements espousing their positive qualities are misleading.").

And, Plaintiffs cannot rely on general statements by third parties (such as *WebMD* and *Men's Health*) regarding some of the benefits provided by creatine, CoQ10, and BCAAs to establish that that BANG® is wholly ineffective because those representations "are not tied to the Product or [VPX's] specific representations about the Product." *Aloudi v. Intramedic Research Grp., LLC*, No. 15-cv-00882, 2015 U.S. Dist. LEXIS 89366, at *15 (N.D. Cal. July 9, 2015).

Even if the allegations in Paragraph 7 of the FAC are accepted as true, which they should not be, considering the context in which they were made, as discussed above, Plaintiffs have failed to plausibly establish that these alleged representations are false or misleading with any reliable scientific studies. Plaintiffs fail to plausibly establish that the creatine in BANG® does not reach the brain more effectively than other forms of creatine, or that it is categorically impossible for

creatine to be effective in any quantity in combating degrading cognitive processes or illnesses. *Hodges*, 2014 U.S. Dist. LEXIS 5109, at *13 ("The implication that affirmative proof as to the effectiveness of an ingredient at one dosage renders it ineffective at some other, lower dose, as contained in the Product's formulation does not state a *prima facie* Consumer Fraud Act claim.").

Plaintiffs' bare conclusions that BANG® lacks certain ingredients or is ineffective are insufficient to plausibly establish that VPX's representations are false or misleading.  Without properly identifying, among other things, what benefits Plaintiffs expected to receive from BANG® and how they determined that those benefits were in fact not provided (i.e., that BANG® is "ineffective"), their claims are nothing more than hollow speculation.

### D.      Plaintiffs Fail to State a Claim Under the "Unfair" Prong of the UCL

Plaintiffs allege that VPX's business practices are "unfair" under the UCL because "they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to their customers" and violate "the legislatively declared policies of the UCL."  (FAC, ¶ 130.)  While "California law 'is currently unsettled with regard to the standard applied to consumer claims under the unfair prong of the UCL,'" the California Supreme Court "requires that claims under the unfair prong be 'tethered to some legislatively declared policy.'"  *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2019 U.S. Dist. LEXIS 58618, at *44 (N.D. Cal. Apr. 4, 2019) (internal citations omitted).  A UCL claim that vaguely alleges that a defendant's conduct violated an "established policy" without identifying that policy, as Plaintiffs do here, does not survive a motion to dismiss.  *Victor*, 2014 U.S. Dist. LEXIS 34550, at *61 (dismissing unfair prong UCL claim because the plaintiff failed to identify established legislative or public policy). Plaintiffs *still* do not identify with any degree of particularity what "legislatively declared policies" VPX allegedly offended, and thus fails to state a claim for relief under the unfair prong of the UCL.

## II.      PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF MUST BE DISMISSED BECAUSE THERE IS NO THREAT OF FUTURE HARM

Plaintiffs allege that VPX continues to mislabel BANG® and that "Plaintiffs and the Class have suffered and will continue to suffer irreparable harm if [VPX] continues to engage in such deceptive, unfair, and unreasonable practices" (FAC, ¶¶ 56, 67, 74, 91, 106, 126, 132, 145), and seek to enjoin VPX "from continuing the acts and practices above."  (FAC, p. 35 at ¶ 2.)  Plaintiffs also seek a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that VPX's

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

"conduct is unlawful." (FAC, ¶ 75.) Plaintiffs' requested declaratory and injunctive relief fails for lack of Article III standing because they have failed to establish any actual harm, much less any future threat of harm. Plaintiffs' Declaratory Relief Act claim also must be dismissed because it is duplicative of their other affirmative claims.

### A. Plaintiffs Lack Standing to Seek Injunctive or Declaratory Relief Because There Is No Actual Threat of Future Harm

Article III standing requires a plaintiff to establish that she "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Veal v. Citrus World, Inc.*, No. 12-801, 2013 U.S. Dist. LEXIS 2620, at * 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013). Rather, a plaintiff seeking injunctive relief must establish "continuing, present adverse effects" traceable to the defendant's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

> Although FDUTPA allows plaintiffs to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it does not displace Constitutional standing requirements. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). Article III requires that a plaintiff seeking injunctive relief allege threat of future harm. "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Veal v. Citrus World, Inc.*, Case No. 12-801, 2013 U.S. Dist. LEXIS 2620, 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

*Lombardo v. Johnson & Johnson Consumer Cos.*, No. 13-cv-60536, 2014 U.S. Dist. LEXIS 156881, at *14 (S.D. Fla. Sep. 9, 2014); *see Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (dismissing claim for injunctive relief sought under FDUTPA due to lack of future harm).[8]

---

[8] *See also Ohio State Troopers Ass'n v. Point Blank Enters.*, No. 0:17-cv-62051, 2018 U.S. Dist. LEXIS 190100, at *36 (S.D. Fla. Oct. 26, 2018) (same); *Marty v. Anheuser-Busch Cos.*, LLC, 43 F. Supp. 3d 1333, 1354 (S.D. Fla. 2014) (same); *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019, 2013 U.S. Dist. LEXIS 68072, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) (dismissing injunctive claim under CLRA, UCL , FAL because it is "apparent that Plaintiff has no intention of buying Defendant's skin tag removal product again in the future"); *Freeman v. ABC*

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

Similarly, Article III standing to assert a claim under the Declaratory Judgment Act requires that "a plaintiff must prove not only an injury, but also a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement." *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-Civ, 2018 U.S. Dist. LEXIS 38948, at *7 (S.D. Fla. Mar. 9, 2018) (citing *Barry v. Carnival Corp.*, 424 F. Supp. 2d 1354, 1356-57 (S.D. Fla. 2006), *aff'd*, 257 F. App'x 224 (11th Cir. 2007)); *Malowney v. Fed. Collection Deposit Grp*., 193 F.3d 1342, 1347 (11th Cir. 1999).

In *Marty*, this Court considered allegations identical to those in the FAC and concluded that "[t]he only logical inference from this allegation is that the plaintiffs no longer purchase [the product]," and found that the plaintiff lacked Article III standing to pursue injunctive relief under FDUTPA. *Marty*, 43 F. Supp. 3d at 1351–1359 (finding that because there were "no allegations in the Amended Complaint that the plaintiffs would purchase [the product] in the future . . . the plaintiffs have failed to plead 'a real and immediate threat of future injury,' and thus have failed to plead standing to seek injunctive relief.") (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

Here, Plaintiffs do not allege that they intend to purchase BANG® in the future. Nor could they credibly allege that, should they decide to purchase BANG® again, they would be misled by VPX's labeling of the product. In other words, there is no risk that Plaintiffs will suffer a future injury due to VPX's alleged misrepresentations because of their alleged awareness that the product is mislabeled, as set forth in the FAC. (*See* FAC, ¶¶ 39, 40 (alleging that Plaintiffs purchased BANG® in reliance on VPX's representations, and that they "would not have purchased, would not have paid as much for the products, or would have purchased alternative" and have allegedly "since learned that BANG does not contain the marketed and labeled ingredients")); *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) ("[T]he law accords people the dignity of assuming that they act rationally, in light of the information they possess."); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 496 (E.D. Pa. 2016) ("Because Plaintiff is now familiar with

---

*Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927 (N.D. Cal. 2012) (dismissing injunctive relief claims under UCL because the allegations established only that the defendant "will (allegedly) harm many people, but not necessarily that it will harm Plaintiffs again"); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (finding plaintiff had not shown that he faces any future harm because "if [plaintiff] paid an inflated price for the product based on OCZ's alleged misrepresentations, he is no danger of doing so again"); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 421 (E.D. Pa. 2016) (dismissing claim for injunctive relief under UTPCPL because the plaintiff was not at risk of being exposed to the alleged unlawful conduct in the future).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

Defendant's labeling practices, it is a 'speculative stretch' to say Plaintiff would 'unwittingly accept' the labels' assertions in the future.")  Accordingly, Plaintiffs do not have standing to seek injunctive or declaratory relief under any claim asserted in the FAC.[9]

### B.   Plaintiffs' Claim for Declaratory Relief Must Be Dismissed as Being Duplicative of Their Other Affirmative Claims

This Court should dismiss the Declaratory Relief Claim as duplicative of the other affirmative claims in the FAC because it does not provide any relief that is not available under other counts and amounts to a petition asking this Court to find that VPX is liable for the claims Plaintiffs assert in the FAC.

"[C]ourts enjoy discretion in determining whether to entertain a declaratory judgment action." *Clark v. Rockhill Ins. Co.*, No. 6:18-cv-780, 2018 U.S. Dist. LEXIS 175184, at *16 (M.D. Fla. Sep. 21, 2018) (citation omitted).  Whether to provide declaratory relief "'depend[s] upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).  In exercising this discretion, the Court should consider whether granting declaratory relief would serve a useful purpose. *Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971).[10]

A declaratory judgment action is redundant (and would not serve a useful purpose) if resolution of the affirmative claims and counter-claims before the Court would resolve all questions that the declaratory judgment action raises.  *Ecoquij-Tzep v. Le Arlington, Inc.*, No. 3:16-cv-625, 2018 U.S. Dist. LEXIS 60842, at *8 (N.D. Tex. Apr. 10, 2018).  To determine whether the declaratory judgment serves a useful purpose, courts should consider "whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim."  *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011).  A claim for declaratory relief should be dismissed as duplicative of other claims if it provides relief that cannot be secured through other claims asserted.

---

[9] Plaintiffs' claims for injunctive and declaratory relief under the UTPCPL must be dismissed for the additional reason that those remedies are not available under the UTPCPL. *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125, 169 (E.D. Pa. 2017) (citing *Goleman v. York Int'l Corp.*, No. 11-1328, 2011 U.S. Dist. LEXIS 85477, at *29 n.6 (E.D. Pa. Aug. 3, 2011)).

[10] *Allstate* is binding in this Circuit under *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

*Kenneth F. Hackett & Assocs. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010).

Here, Plaintiffs' claim for declaratory relief is duplicative of their other affirmative claims and does not secure relief that is in any way different than the relief sought under their affirmative claims. In essence, Plaintiffs are requesting a declaration that VPX is liable under their other affirmative claims, which would not serve a useful purpose. Accordingly, Count IV should be dismissed with prejudice.

As demonstrated herein, Plaintiffs' FAC contains conclusory and contradictory assertions, without necessary specificity or factual support necessary to satisfy the pleading standards under *Twombly* and *Iqbal*, much less the required elements for Plaintiffs' asserted claims. Nor do Plaintiffs have standing to seek either injunctive or declaratory relief.

## IV.     THE ECONOMIC LOSS RULE BARS PLAINTIFF'S UTPCPL AND NEGLIGENT MISREPRESENTATION CLAIMS

Plaintiff Muscara's UTPCPL and negligent misrepresentation claims are barred by the economic loss doctrine.

> Pennsylvania's economic loss doctrine "provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) (quoting *Adams v. Copper Beach Townhome Cmtys., L.P.*, 2003 PA Super 30, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). The economic loss doctrine originated in the products liability context and rests on the notion that "the need for a remedy in tort is reduced when the only injury is to the product itself and 'the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)). Where the customer's injury is "based upon and flow[s] from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased," "the harm sought to be redressed is precisely that which a warranty action does redress." *REM Coal Co. v. Clark Equip. Co.*, 386 Pa. Super. 401, 563 A.2d 128, 129 (Pa. Super. Ct. 1989).

*Whitaker*, 198 F. Supp. 3d at 487. Purely economic losses are not recoverable under the UTPCPL or through a claim of negligent misrepresentation. *Id.* at 490 (E.D. Pa. 2016) (dismissing UTPCPL and negligent misrepresentation claims pursuant to the economic loss doctrine); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (affirming order dismissing UTPCPL and negligent misrepresentation claims under economic loss doctrine); *Rosenfield v. Frank*, No. 4:18-cv-00568,

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

2019 U.S. Dist. LEXIS 93004, at *16 (M.D. Pa. June 4, 2019) (dismissing negligent misrepresentation claim seeking economic damages for claims solely relating to "the qualities or characteristics" of the product); *Jacobs v. Halper*, 116 F. Supp. 3d 469, 484 ("As for Plaintiff's UTPCPL claim, it is barred by the economic loss doctrine under Pennsylvania law."); *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-1020, 2016 U.S. Dist. LEXIS 75403, at *50 (W.D. Pa. June 9, 2016) (dismissing negligent misrepresentation claim seeking economic damages pertaining to defective roofing system).

*Whitaker* is directly on point. There, the plaintiff claimed that the defendant, a food manufacturer, misbranded food products by falsely claiming on its labels that its products were all natural and free of preservatives and MSG when the products actually contained artificial ingredients. 198 F. Supp. 3d at 481–482. The plaintiff claimed that he had purchased the defendant's products in reliance on the labels' representations, and that he paid more money than he would have paid for other products containing artificial ingredients. *Id*. at 482. The plaintiff filed a collective action alleging, among other claims, violations of UTPCPL and negligent misrepresentation. *Id*. The court found that the plaintiff claimed only "simple economic loss" without physical or property damage. *Id*. at 487. Relying on *Werwinski* and Pennsylvania's economic loss doctrine, the court dismissed the plaintiffs' UTPCPL and negligent misrepresentation claims.[11] *Id*. at 490, 492.

Here, Plaintiff Muscara claims only economic losses. He does not allege any physical or property damage; only that the product did not meet his expectations and that he did not receive the benefit of his bargain. Specifically, he alleges that he "spent money on a premium-price

---

[11] As noted by the *Whitaker* court, after *Werwinski* was decided, a Pennsylvania intermediate appellate court found that "the economic loss doctrine does not apply to statutory claims brought under the UTPCPL." 198 F. Supp. 3d at 488 (emphasis in original) (citing *Knight v. Springfield Hyundai*, 2013 PA Super 309, 81 A.3d 940 (Pa. Super. Ct. 2013)). The Supreme Court of Pennsylvania has not addressed the issue. Even after *Knight*, courts in the Third Circuit continue to dismiss UTPCPL claims seeking only economic damages. *See Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 144-45 (3d Cir. 2013). Until the Pennsylvania Supreme Court decides the issue, this Court "should opt for the interpretation that restricts liability rather than expands it," *Werwinski*, 286 F.3d at 680 (citations omitted), and apply the economic loss doctrine to Plaintiff Muscara's UTPCPL claim. Other Courts in this District have continued to follow *Werinski* and apply the economic loss rule to dismiss UTPCPL claims pertaining to the quality of a product. *Cooper v. Mass. Mut. Life Ins. Co.*, No. 11-62162-CIV, 2012 U.S. Dist. LEXIS 83817, at *11 (S.D. Fla. June 15, 2012) (following *Werwinski* and dismissing UTPCPL claim seeking economic damages).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

product (BANG) that [he] would not have otherwise spent and did not receive the value for" (FAC, ¶ 161) and that "BANG did not provide the promise benefits" (FAC, ¶ 169).  Plaintiff Muscara's claimed damages fall squarely within Pennsylvania's economic loss rule.  Accordingly, his UTPCPL and negligent misrepresentation claims should be dismissed.

## CONCLUSION

WHEREFORE, Defendant VPX respectfully requests that the Court enter an order granting this motion and dismissing the FAC in its entirety, with prejudice, and such other further relief as it deems appropriate under the circumstances.

Respectfully submitted on June 24, 2019,

*s/ Andrew R. Schindler*
Florida Bar No. 124845
*aschindler@grsm.com*

GORDON REES SCULLY
MANSUKHANI LLP
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Tel: (305) 428-5330
*Attorneys for Defendant,*
*Vital Pharmaceuticals, Inc.*

and

Marc J. Kesten (Florida Bar No. 691801)
*marc.kesten@vpxsports.com*
Francis Massabki (Florida Bar No. 687901)
*frank.massabki@vpxsports.com*
Vital Pharmaceuticals, Inc.
1600 North Park Dr.
Weston, FL 33326
Tel: (954) 641-0570
*Attorneys for Defendant,*
*Vital Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed on June 24, 2019 with the Clerk by using the CM/ECF system, which will notify all counsel of record of this filing.

*s/ Andrew Schindler*

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131